# IN THE COURT OF APPEALS OF IOWA

No. 21-1531
Filed September 21, 2022

**MT. SINAI CHRISTIAN FELLOWSHIP CHURCH OF GOD IN CHRIST, INC.,**
     Plaintiff-Appellant,

**vs.**

**SCOTT COUNTY BOARD OF SUPERVISORS,**
     Defendant-Appellee,

_____

**MT. SINAI CHRISTIAN FELLOWSHIP CHURCH OF GOD IN CHRIST, INC.,**
     Plaintiff-Appellant,

**vs.**

**SCOTT COUNTY TREASURER,**
     Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Joel W. Barrows,

Judge.

        Mt. Sinai Christian Fellowship Church of God in Christ, Inc. appeals from

the district court's denial of its petitions for writ of mandamus against the Scott

County Board of Supervisors and the Scott County Treasurer.  **AFFIRMED.**

        Aaron M. Miers of Brooks Law Firm, P.C., Rock Island, Illinois, for appellant.

        Robert L. Cusack of the Scott County Attorney's Office, Davenport, for

appellees.

        Considered by Bower, C.J., Chicchelly, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**SCOTT, Senior Judge.**

Mt. Sinai Christian Fellowship Church of God in Christ, Inc. (Mt. Sinai) appeals from the district court's denial of its petitions for writ of mandamus against the Scott County Board of Supervisors (Board) and the Scott County Treasurer (Treasurer) (collectively, the County) regarding the County's failure to abate property taxes or refund previously paid property taxes.[1]

A writ of mandamus may issue to "command[] an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station." Iowa Code § 661.1 (2021). Mt. Sinai claims it is entitled to the refund of property taxes paid on its behalf for tax years 2016 and 2017 and the abatement of property taxes owing for tax year 2018—all of which it claims are based on a religious organization's exemption from property taxes found in Iowa Code section 427.1(8) and (14).[2] The district court granted summary judgment to the County, and Mt. Sinai appeals. Because we concur with the district court's statutory interpretation and conclusions, we affirm the dismissal of Mt. Sinai's mandamus actions.

**I. Background Facts and Proceedings.**

The district court provided a straightforward statement of undisputed facts:

---

[1] The two mandamus actions, one against the Board and one against the Treasurer, were considered together on competing motions for summary judgment. The district court rejected Mt. Sinai's claims in a combined ruling.

[2] Iowa Code chapter 427 has been amended since Mt. Sinai purchased the property in 2015. *See* 2021 Iowa Acts ch. 80, § 267; 2015 Iowa Acts ch. 116, § 24 (amending Iowa Code § 427.1(8)). However, the parties and the district court cite to the 2021 version of the Code, and the statutory language involved does not appear to have been substantively amended for purposes of Mt. Sinai's assertions. Thus, we will refer to the 2021 version of the Iowa Code throughout.

Living Water Family Church, Inc. (Living Water) owned property located at [XXX] Northwest Boulevard, Davenport, Iowa (the property). Living Water was a registered religious and charitable organization incorporated in the State of Iowa. From tax years 2008 through 2015, Living Water used the property primarily as a worship space for their congregation and office space for their staff. During this time, the property was exempt from property taxes and no taxes were assessed.

On July 29, 2015, [Mt. Sinai] purchased the property. Mt. Sinai is also a registered religious and charitable organization incorporated in the State of Iowa . . . . Mt. Sinai intended to and did use the property for the same primary purposes as it was used by Living Water. On August 5, 2015, the Davenport City Assessor's Office sent a courtesy notice to Mt. Sinai informing them of the need to file a request for tax-exempt status on the property. This notice was sent to [ZZZ] North Pine Street, Davenport, Iowa, due to an error in the deed listing the common address of the property as that address. However, Mt. Sinai also owned [ZZZ] North Pine Street until 2018.

During tax years 2016, 2017, and 2018, the property was assessed taxes in the amounts of $33,096, $34,294, and $34,238, respectively. Mt. Sinai paid a portion of the first half of the 2016 property taxes, but did not pay the other assessed taxes. Tax delinquency notices were sent to the [ZZZ] North Pine Street address, but not to the true address of the property. Mt. Sinai filed for a tax exemption on the property on May 22, 2018. On May 28, 2018, Mt. Sinai sent [the Board] a written request to abate their taxes then owing and reimburse the taxes already paid for tax years 2016 through 2018. Mt. Sinai met with Board Chairman Tony Knobbe regarding this request on May 31, 2018.

On June 18, 2018, [the Treasurer] sold the unpaid taxes from 2016 at tax sale to HI 100, LC. These taxes were redeemed by LBC1 Trust, the lender who financed Mt. Sinai's purchase of the property. On November 19, 2018, and May 20, 2019, the 2017 property taxes were sold in two halves at tax sales to OHP1 LC, also known as Oak Helm Partners. On August 20, 2019, Mt. Sinai made another request to the Board to abate the taxes, and Mt. Sinai made another request to reimburse the taxes already paid on May 29, 2020.

On June 16, 2020, Mt. Sinai asked the Treasurer to abate the first half of the 2018 property taxes. The Treasurer refused, and Mt. Sinai made another request to the Board to abate these taxes—and reimburse those already paid—on July 7, 2020. The Board took no action on this request, and the first half of the 2018 property taxes were scheduled to go to tax sale in June, 2021. The Board abated the second half of the 2018 taxes, citing the timing of Mt. Sinai's exemption filing.

On October 12, 2020, Mt. Sinai filed the petitions in these two cases, requesting writs of mandamus to the Board and the Treasurer instructing them to abate the first half of the 2018 taxes and reimburse the 2016 and 2017 taxes. Due to these cases being filed, the unabated 2018 taxes were withdrawn from the anticipated tax sale. On July 16, 2021, the parties filed all three pending motions for summary judgment.

In its motion for summary judgment, Mt. Sinai argued the taxes were illegally or erroneously assessed because the religious use exemption continues with the property until the use of the property changes—regardless of ownership. Mt. Sinai argued that upon a change of ownership, Iowa Code section 427.1(14) requires the county recorder to provide notice to the county assessor, who then evaluates the use of the property to determine a tax liability. It asserts the provision does not require the religious entity purchaser from a religious entity seller to file any exemption form.

The County sought summary judgment, arguing a new exemption filing is required whenever the property changes ownership and the statutes raised by Mt. Sinai do not vest them with discretion to reimburse or abate its property taxes.

The district court concluded section 427.1(14) "requires a new exemption filing whenever property subject to the [religious or] charitable use exemption changes hands, even if the new owner uses the property in the same manner as the previous owner." The district court reasoned:

> requiring a new owner of property previously subject to the charitable use exemption to refile for the exemption is a matter of practical necessity. . . . [The County] state[s] that the county government would have no way of knowing whether the exemption is appropriate without some level of self-reporting by the taxpayer. The court agrees that this is a legitimate concern which displays the absurd results which would follow from automatically extending the exemption to subsequent purchasers.

Because the court determined the property taxes were not illegally or erroneously assessed, the district court also rejected Mt. Sinai's arguments that County was required to refund the taxes under Iowa Code section 445.60. Finally, the court accepted the County's assertions that it had no discretion to abate and reimburse the assessed taxes, despite Mt. Sinai's contrary claims. The district court granted the County summary judgment. Mt. Sinai appeals.

## II. Scope and Standard of Review.

"Mandamus is an equitable action generally reviewed de novo. But our review of a summary judgment ruling in a case filed in equity is for errors of law." *Knoer v. Palo Alto Cnty. Bd. of Sup'rs*, No. 15-0742, 2016 WL 3556431, at *2 (Iowa Ct. App. June 29, 2016) (internal citation omitted). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In considering a motion for summary judgment that requires an interpretation of a statute, our review is for correction of legal error." *Dolphin Residential Coop., Inc. v. Iowa City Bd. of Rev.*, 863 N.W.2d 644, 647 (Iowa 2015).

## III. Discussion.

Our task is to determine what the Code requires when a new owner purchases a property previously granted an exemption. Section 427.1 states, "The following classes of property shall not be taxed." Subsection 8 is applicable to "Property of religious, literary, and charitable societies," and provides:

> (a) All grounds and buildings used or under construction by literary, scientific, charitable, benevolent, agricultural, and religious institutions and societies solely for their appropriate objects, not exceeding three hundred twenty acres in extent and not leased or otherwise used or under construction with a view to pecuniary

profit. . . .  For assessment years beginning on or after January 1, 2016, the exemption granted by this subsection shall also apply to grounds owned by a religious institution or society, not exceeding a total of fifty acres, if all monetary and in-kind profits of the religious institution or society resulting from use or lease of the grounds are used exclusively by the religious institution or society for the appropriate objects of the institution or society.

(b) All deeds or leases by which such property is held shall be filed for record before the property herein described shall be omitted from the assessment.  All such property shall be listed upon the tax rolls of the district or districts in which it is located and shall have ascribed to it an actual fair market value and an assessed or taxable value, as contemplated by section 441.21,[3] whether such property be subject to a levy *or be exempted as herein provided* and such information shall be open to public inspection.

Iowa Code § 427.1(8) (emphasis added).

The premise for Mt. Sinai's assertion of automatic exemption lies with this language from subsection 14—an exemption is "allowed on the property for successive years without further filing as long as the property is used for the purposes specified in the original claim for exemption."  Mt. Sinai asserts the statutory language is plain and supports its contention that "once a property has a religious exemption status by virtue of an exempt use, that property remains exempt so long as the use remains the same, even with the transfer of title.  No filing or refiling of the exemption application is needed."  The district court concluded a new exemption filing was required as a practical matter to avoid absurd results.  But Mt. Sinai is unswayed by possible absurd results, contending,

---

[3] Iowa Code section 441.21(1)(a) states:

All property subject to taxation shall be valued at its actual value which shall be entered opposite each item, and, except as otherwise provided in this section, shall be assessed at one hundred percent of its actual value, and the value so assessed shall be taken and considered as the assessed value and taxable value of the property upon which the levy shall be made.

"Absurd or not, the plain language of the Code does place the burden on the county assessor to determine whether the exemption is appropriate to continue."  We cannot agree.

In *Carreras v. Iowa Department of Transportation, Motor Vehicle Division*, 977 N.W.2d 438, 446 (Iowa 2022), our supreme court explained:

> The first step in our statutory interpretation analysis is to determine whether the statute is ambiguous.  Our inquiry ends with the plain language if the statute is unambiguous.  A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute based on the context of the statute.  If a statute is ambiguous, we rely on principles of statutory construction to resolve the ambiguity.

(Internal quotation marks and citations omitted.)  The differing interpretations here show reasonable minds disagree as to the interpretation of section 427.1(14).  *See Carreras*, 977 N.W.2d at 446.  "It is universally accepted that where statutory terms are ambiguous, courts should interpret the statute in a reasonable fashion to avoid absurd results."  *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 534 (Iowa 2017).

"[T]axation is the rule, exemption is the exception."[4]  *Lowe's Home Ctrs., LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 46 (Iowa 2018).  Mt. Sinai, "as the taxpayer seeking the exemption, has the burden of proving its entitlement to tax exempt status."  *Sioux Ctr. Cmty. Hosp. & Health Ctr. v. Bd. of Rev.*, No. 05-1278, 2006 WL 1230012, at *1 (Iowa Ct. App. Apr. 26, 2006).  We strictly construe statutes that exempt property from taxation, and we resolve any doubts in favor of taxation.  *Lowe's*, 921 N.W.2d at 46.

---

[4] "Exempt" means "[f]ree or released from a duty or liability to which others are held."  *Exempt*, *Black's Law Dictionary* (11th ed. 2019).

In support of its claim that the exemption runs with the property, Mt. Sinai quotes, "It is the character of the use, rather than the identity of the owner, which determines whether an organization's property is exempt from taxation." *Holy Spirit Ret. Home, Inc. v. Bd. of Rev.*, 543 N.W.2d 907, 910 (Iowa 1995). It argues that because the purchased property has been used as a place of worship since 2008 and the use did not change with the change of the ownership of the property in 2015, taxes were assessed in error or illegally.

Section 427.1(14) provides:

> *A society or organization claiming an exemption* under subsection . . . 8 . . . *shall file with the assessor* not later than February 1 a statement upon forms to be prescribed by the director of revenue, describing the nature of the property upon which the exemption is claimed and setting out in detail any uses and income from the property derived from the rentals, leases, or other uses of the property not solely for the appropriate objects of the society or organization. *Upon the filing and allowance of the claim*, the claim shall be allowed on the property for successive years without further filing as long as the property is used for the purposes specified in the original claim for exemption. When the property is sold or transferred, the county recorder shall provide notice of the transfer to the assessor. The notice shall describe the property transferred and the name of the person to whom title to the property is transferred.
>
> (a) The assessor, in arriving at the valuation of any property of the society or organization, shall take into consideration any uses of the property not for the appropriate objects of the organization and shall assess in the same manner as other property, all or any portion of the property involved which is leased or rented and is used regularly for commercial purposes for a profit to a party or individual. If a portion of the property is used regularly for commercial purposes, an exemption shall not be allowed upon property so used and the exemption granted shall be in the proportion of the value of the property used solely for the appropriate objects of the organization, to the entire value of the property. . . .
>
> (b) . . . A claimant of an exemption shall, under oath, declare that no violations of law will be knowingly permitted or have been permitted on or after January 1 of the year in which a tax exemption is requested. *Claims for exemption shall be verified under oath by the president or other responsible head of the organization*. A

society or organization which ceases to use the property for the purposes stated in the claim shall provide written notice to the assessor of the change in use.

(Emphases added.)

Reading the provision in its entirety, the statute makes clear that it is the taxpayer that obtains an exemption: "A society or organization claiming an exemption . . . ." Iowa Code § 427.1(14); *see Iowa Methodist Hosp., v. Bd. of Rev.*, 252 N.W.2d 390, 392 ("Under our decisions *a charitable organization may be entitled to exemption* on some of its property and be subject to taxation on others. It is not the identity of the owner but the character of the use which controls." (emphasis added) (internal citation omitted)).

The language anticipates action must be taken by the taxpayer to claim an exemption; the taxpayer

society or organization claiming an exemption . . . *shall file* with the assessor not later than February 1 a statement upon forms to be prescribed by the director of revenue, describing the nature of the property upon which the exemption is claimed and setting out in detail any uses . . . . *Upon the filing* and allowance of the claim . . . .

Iowa Code § 427.1(14) (emphases added).

We conclude the district court correctly interpreted section 427.1(14) to "require[] a new exemption filing whenever property subject to the charitable use exemption changes hands, even if the new owner uses the property in the same manner as the previous owner." Absent a request for an exemption by the property owner, the property is subject to taxation.

*Taxes paid in error or illegally.* Mt. Sinai argues the taxes paid on behalf of Mt. Sinai were erroneously or illegally paid and, pursuant to Iowa Code section

445.60, must be refunded.[5] "[A] tax is erroneous or illegal so a refund may be enforced when it is levied (1) without statutory authority or (2) upon property not subject to taxation or (3) by some officer or officers having no authority to levy the same, or (4) in some other similar illegal respect." *Isbell v. Bd. of Sup'rs*, 54 N.W.2d 508, 511 (Iowa 1952).

Mt. Sinai contends the property is not subject to taxation; "[t]he simple, straight-forward mistake of including the wrong address to the deed and transfer documents demonstrates the error required of Iowa Code section 445.60. The subsequent levying the tax on a religious organization, indisputably exempt from taxation, demonstrates the taxes paid were illegal."

Real property of a religious or charitable society is subject to taxation unless "exempted as herein provided." Iowa Code § 427.1(8). As already addressed, a religious society must file for an exemption. We agree with the district court that concluding a taxpayer's error in failing to request an exemption makes the assessment of taxes erroneous or illegal "would go much too far to constitute a reasonable interpretation of section 445.60."

---

[5] Section 445.60 provides:

> The board of supervisors shall direct the county treasurer to refund to the taxpayer any tax or portion of a tax found to have been erroneously or illegally paid, with all interest, fees, and costs actually paid. A refund shall not be ordered or made unless a claim for refund is presented to the board within two years of the date the tax was due, or if appealed to the board of review, the property assessment appeal board, the state board of tax review, or district court, within two years of the final decision.

*Discretionary abatement.* Mt. Sinai next asserts the Board had discretion to abate the 2018 taxes. Iowa Code section 427.3 allows a board of supervisors to abate taxes

> levied against property acquired by . . . purchase by a person or entity if the property acquired by . . . purchase was transferred to the person or entity after the deadline for filing for property tax exemption *in the year in which the property was transferred* and the property acquired by . . . purchase would have been exempt under section 427.1, subsection 7, 8, or 9, if the person or entity had been able to file for exemption in a timely manner.

(Emphasis added.)

The district court found the provision inapplicable to Mt. Sinai's request for abatement of the 2018 taxes because it "overlooks the limiting condition in the statute. The Board only has this authority 'if the property . . . was transferred to the person or entity after the deadline for filing for property tax exemption in the year in which the property was transferred.'" (Alteration in original.) (Quoting Iowa Code § 427.3.) We conclude this interpretation is sound, and the Board had no discretion in this instance to abate the 2018 taxes.[6]

*Section 445.16(3) abatement when "impractical to pursue collection" of taxes.* Section 445.16 states:

> (1) If the county holds the tax sale certificate of purchase, the county, through the board of supervisors, may compromise by written agreement, or abate by resolution, the tax, interest, fees, or costs. In the event of a compromise, the board of supervisors may enter into a written agreement with the owner of the legal title or with any lienholder for the payment of a stipulated sum in full satisfaction of all amounts included in that agreement. In addition, if a parcel is offered at regular tax sale and is not sold, the county, prior to public

---

[6] The Board did abate the second half of the 2018 taxes based on the filing of Mt. Sinai's claim of exemption, which it probably did not have discretion to do under this statutory provision. No party challenged that abatement, so we do not consider the legality of it.

bidder sale to the county under section 446.19, may compromise by written agreement, or abate by resolution, the tax, interest, fees, or costs, as provided in this section.

(2) A copy of the agreement or resolution shall be filed with the county treasurer.

(3) If the treasurer determines that it is impractical to pursue collection of the total amount due through the tax sale and the personal judgment remedies, the treasurer shall make a written recommendation to the board of supervisors to abate the amount due. The board of supervisors shall abate, by resolution, the amount due and direct the treasurer to strike the amount due from the county system.

Mt. Sinai asserts summary judgment was improperly granted. Focusing only on subsection 3, Mt. Sinai argues that the Treasurer did not adequately support his motion for summary judgment by an affidavit or other admissible evidence to show he made his decision not to recommend abatement based on substantial evidence and rationality.

But the County argues section 445.16 is not applicable: "It was not 'impractical to pursue collection of the total amount due through the tax sale' because a tax sale was actually held and the tax certificates were sold to Oak Helm Partners." The district court reiterated it had already concluded the County had no discretion to abate. We conclude that because the Treasurer did not have to determine whether it was impractical to pursue collection, a writ of mandamus is not available.

*Disparate treatment.* Finally, Mt. Sinai notes another religious entity was granted an abatement several years earlier and claims its own circumstances are similar enough that it should not be treated differently. The district court found the circumstances under which the prior abatement was granted were not statutorily based and "an aberration—a mistake on the part of the Treasurer and the Board."

Moreover, the court stated, "It is not clear that failure to exercise statutory discretion displays non-compliance with an enforceable duty" such that mandamus would be available.  We find no error.

**AFFIRMED.**